# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SESSION FIXTURE COMPANY, INC.** | * | **CIVIL ACTION NO.** |
| | * | |
| **VERSUS** | * | **JUDGE** |
| | * | **SECTION " "** |
| **PRIDE MARKETING AND** | * | |
| **PROCUREMENT, INC.,** | * | |
| **ADMIRAL INSURANCE COMPANY,** | * | **MAGISTRATE** |
| **and XYZ INSURANCE COMPANY** | * | |
| | * | **MAGISTRATE NO:** |

*********************************************

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, SESSION FIXTURE COMPANY, INC. ("Session") which respectfully avers:

1.

Plaintiff Session is and was at all relevant times a corporation duly organized, created and existing pursuant to the laws of the State of Missouri with its principal place of business located in St. Louis, Missouri.

2.

Made defendants herein are:

(a) Pride Marketing and Procurement, Inc., a corporation duly organized, created and existing pursuant to the laws of the State of Louisiana with its principal place of business located in Metairie, Louisiana ("Pride");

(b) Admiral Insurance Company, a foreign insurance company licensed to issue surplus lines coverage in the State of Louisiana ("Admiral"), made defendant herein pursuant to LA. REV. STAT. ANN. § 22:1269; and

(c) XYZ Insurance Company, an insurance company licensed or otherwise authorized to do business in the State of Louisiana ("XYZ Insurance"), made defendant herein pursuant to LA. REV. STAT. ANN. § 22:1269.

3.

Jurisdiction is predicated upon 28 U.S.C.A. § 1332 as this action exceeds the sum or value of $75,000.00, exclusive of interests and costs, and is between citizens of different States.

4.

Because a substantial part of the events giving rise to the action occurred in this judicial district, venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C.A. § 1391(b)(2).

## **BACKGROUND**

5.

At all relevant times, Pride was a buying group in the business of facilitating large purchases of equipment on behalf of its shareholders.

6.

As a result of the pooled buying power of its shareholders, Pride procured and accrued rebates from vendors and suppliers for purchases made by or on behalf its shareholders (hereinafter referred to as "Rebates").

7.

The amount of such Rebates to the respective shareholders was based upon the value of the individual shareholder's purchases made during any given year.

8.

As Rebates accrued during a business year, Pride would collect and thereafter distribute such Rebates to its shareholders.

9.

At all relevant times, Session was a shareholder of Pride.

10.

At all relevant times, Pride and Session were parties to the "Amended and Restated Shareholder Agreement of Pride Marketing and Procurement, Inc.", entered into and effective October 31, 2006 (hereinafter "Shareholder Agreement"). A copy of the Shareholder Agreement is attached hereto and made a part hereof as Exhibit "1".

11.

At all relevant times, the Rebates received by Pride attributable to Session for purchases made by or on account of Session were and remain the property of Session.

12.

Pursuant to Section 3.02 (A) of the Shareholder Agreement, Session granted Pride a limited security interest in its Rebates, which security interest was restricted "to secure and satisfy any and all indebtedness and other obligations owed to Pride by [Session]".

13.

Pursuant to Section 3.02 (B) of the Shareholder Agreement, Pride could only withhold and suspend Rebate payments to Session "until such time as the outstanding balance due and owing to Pride by [Session is] reduced to an amount due and owing to Pride which may be satisfied by the balance of the Shareholder Letter of Credit . . ."

14.

At all relevant times, there were no amounts due and owing to Pride from Session exceeding the balances of the letters of credit which Session had delivered to Pride; therefore, Pride had no right to suspend Rebate payments to Session.

15.

Session is informed and believes that, at all relevant times Foodservicewarehouse.com, LLC ("FSW") was an Internet-based food service equipment and supplies dealership and was an affiliate of Pride.

16.

Session is informed and believes that, at least six of Pride's Directors (the "Conflicted Directors") were part of FSW's governing management committee.

17.

Session is informed and believes that, the Conflicted Directors, among others, had a personal and direct financial interest in FSW.

18.

Session is informed and believes that, during 2015, FSW sought to, and subsequently did, increase its line of credit with IberiaBank from five (5) to approximately twenty-one (21) million dollars.

19.

Session is informed and believes that, as a condition for increasing FSW's credit limit, IberiaBank required that Pride guaranty FSW's debts and pledge certain collateral to secure the guaranty.

20.

Session is informed and believes that, by action of its Board of Directors, including the Conflicted Directors, Pride pledged shareholder funds, including the shareholders' Rebates, as collateral for Pride's guaranty of FSW's debt.

21.

Session is informed and believes that, subsequent to Pride's pledge of its shareholders' Rebates to IberiaBank, FSW defaulted on its credit obligation to IberiaBank, and IberiaBank seized the pledged Rebates in partial satisfaction of FSW's credit obligation.

22.

Session is informed and believes that, FSW filed for bankruptcy protection on or about May 23, 2016, in Case No. 16-11179 pending in the United States Bankruptcy Court for the Eastern District of Louisiana.

23.

Based on its purchases made during the year 2015, Session has earned Rebates in excess of $1.3 million dollars.

24.

Based upon Session's purchases in 2016, year to date, Session has earned additional Rebates in excess of $200,000 dollars.

25.

In March, 2016, Pride informed its shareholders, including Session, that Pride had pledged its shareholders' funds as collateral for FSW's debt and that Pride would not pay its shareholders the Rebates, including those owned by and owed to Session, attributable to purchases made in 2015 or 2016.

26.

Pride had no right or authority to pledge Rebates belonging to Session as collateral for FSW's debt.

27.

Following its discovery of Pride's unauthorized pledge of Session's Rebates and Pride's announcement that it would not pay Session those Rebates, Session withdrew its membership in Pride and tendered its Pride stock certificate, all in accordance with Pride's by-laws.

## **CLAIMS FOR RELIEF**

### **Count 1. Breach of Contract**

Session incorporates by reference the allegations contained in the foregoing paragraphs.

28.

Pursuant to Section 9.01 of the Shareholder Agreement, Pride was obligated to timely and properly account for and pay to Session the Rebates attributable to Session's purchases made during 2015 and 2016.

29.

As a consequence of Pride's unauthorized pledge of Session's Rebates as collateral for FSW's debt, Pride failed or refused to pay to Session its Rebates earned during both 2015 and 2016; therefore, Pride breached the Shareholder Agreement, including specifically, but not limited to, Section 7.01 (j) thereof.

30.

As a consequence of Pride's breach, Session has sustained monetary damages in excess of $1.5 million dollars.

31.

Session reserves the right to amend and supplement its damage claim as this matter proceeds.

## **Count 2. Negligence**

Session incorporates by reference the allegations contained in the foregoing paragraphs.

32.

Pride's board of directors resolved to pledge shareholder Rebates, including Rebates attributable to Session, as collateral for Pride's guaranty of FSW's debt.

33.

Because Session granted Pride only a limited security interest in its Rebates, as set forth in Section 3.02 of the Shareholder Agreement, Pride knew or should have known that it lacked the authority to pledge Rebates belonging to Session.

34.

Pride was negligent in the following non-exclusive particulars:

a.  by wrongfully pledging Session's Rebates as collateral for Pride's guaranty of FSW's indebtedness to IberiaBank, knowing that it lacked the authority to do so;

b.  by failing to segregate Session's Rebates from other shareholders' Rebates, which may or may not have been susceptible of pledge;

c.  by failing to properly investigate FSW's precarious financial status at the time it wrongfully pledged Session's Rebates; and

d.  by other acts of negligence as will be shown at trial of this matter.

- 8 -

35.

As a consequence of Pride's negligence, Session has sustained monetary damages in excess of $1.5 million dollars.

36.

Session reserves the right to amend and supplement its damage claim as this matter proceeds.

### Count 3. Breach of Fiduciary Duty & Disloyalty

Session incorporates by reference the allegations contained in the foregoing paragraphs.

37.

Under Louisiana Revised Statute § 12:1-830 *et seq.*, Pride's directors owed a fiduciary duty to its shareholder, Session, and were required to discharge their duties in good faith and in the best interest of both Pride and its shareholder, Session.

38.

Under Louisiana Revised Statute § 12:1-830 *et seq.*, Pride's directors, including without limitation the Conflicted Directors, owed a duty of loyalty to its shareholder, Session, and were required to timely disclose to Pride's remaining board members information not already known to such remaining board members but known by the directors, including the Conflicted Directors, to be material to the discharge of the Pride board of directors' decision-making or oversight functions.

39.

Pride's directors breached the fiduciary duties which they owed to Session in the following non-exclusive particulars:

    a.    by wrongfully pledging Session's Rebates as collateral for Pride's guaranty of FSW's indebtedness to IberiaBank, knowing that it lacked the authority to do so;

  b.  by failing to properly investigate FSW's precarious financial status at the time it wrongfully pledged Session's Rebates; and

  c.  by other breaches of fiduciary duty as will be shown at trial of this matter.

40.

Pride's Conflicted Directors breached their duty of loyalty owed to Session in the following non-exclusive particulars:

  a.  by failing to disclose any and all conflicts of interest regarding the Conflicted Directors' controlling positions held within FSW;

  b.  by failing to disclose any and all conflicts of interest regarding the Conflicted Directors' personal and direct financial interests in FSW;

  c.  by wrongfully pledging Session's Rebates as collateral for Pride's guaranty of FSW's indebtedness to IberiaBank, without authority and with the knowledge of FSW's precarious financial status; and

  d.  other breaches of the duty of loyalty as will be shown at trial of this matter.

41.

Pride's directors, exclusive of the Conflicted Directors, breached their duty of loyalty owed to Session in the following non-exclusive particulars:

  a.  by failing to disclose any and all conflicts of interest regarding their personal and direct financial interests in FSW;

  b.  by failing to require the Conflicted Directors to recuse themselves on matters or decisions involving Pride's guaranty of FSW's indebtedness to IberiaBank;

  c.  by wrongfully pledging Session's Rebates as collateral for Pride's guaranty of FSW's indebtedness to IberiaBank; and

d.	other breaches of the duty of loyalty as will be shown at trial of this matter.

42.

As a consequence of the Pride directors' breach of their fiduciary duties and duties of loyalty, Session has sustained monetary damages in excess of $1.5 million dollars.

43.

Session reserves the right to amend and supplement its damage claim as this matter proceeds.

**Count 4. Conversion**

Session incorporates by reference the allegations contained in the foregoing paragraphs.

44.

At all times relevant hereto, the Rebates received by Pride attributable to Session for purchases made by or on account of Session during 2015 and 2016 year to date were and remain the property of Session.

45.

Pride did not have the authority to pledge Session's Rebates as collateral for Pride's guaranty of FSW's indebtedness to IberiaBank and diverted Session's Rebates for its own use and for the benefit of its affiliate, FSW.

46.

Despite amicable demand by Session, Pride has failed and refused to remit Session's Rebates to Session.

47.

Pride converted Session's Rebates in the following non-exclusive particulars:

a. by wrongfully pledging Session's Rebates as collateral for Pride's guaranty of FSW's indebtedness to IberiaBank, knowing that it lacked the authority to do so;

b. by failing to segregate Session's Rebates from other shareholders' Rebates, which may or may not have been susceptible of pledge;

c. by wrongfully removing Session's Rebates from one bank account and moving them to another with the intent to exercise control over them;

d. by wrongfully transferring possession of Session's Rebates without the authority to do so;

e. by wrongfully withholding from Session possession of Session's Rebates;

f. by wrongfully diverting Session's Rebates for Pride's own use;

g. by wrongfully asserting ownership of Session's Rebates; and

h. by other acts of conversion as will be shown at trial of this matter.

48.

As a result of Pride's conversion, Session has sustained monetary damages in excess of $1.5 million dollars.

49.

Session reserves the right to amend and supplement its damage claim as this matter proceeds.

**Count 5. Direct Action Insurer Defendants**

Session incorporates by reference the allegations contained in the foregoing paragraphs.

50.

Session is informed and believes that, Admiral issued and delivered to Pride an Admiral ExecSuite Policy for Directors & Officers, Policy No. 1413840, at Pride's corporate headquarters located in Metairie, Louisiana.

51.

At all times pertinent hereto, Admiral insured Pride for the acts, errors, and omissions of its officers and directors described in Paragraphs 31, 36, 37, 38, and 44 herein.

52.

At all times pertinent hereto, XYZ Insurance provided excess and/or umbrella coverage to Pride for the acts, errors, and omissions of its officers and directors described in Paragraphs 31, 36, 37, 38, and 44 herein.

53.

Despite amicable demand upon Defendants, Session has not been compensated for the damages to which it is entitled.

**WHEREFORE**, Session Fixture Company, Inc. respectfully prays that this Court:

1. Assume jurisdiction of this case;
2. Award judgment in favor of Plaintiff Session and against the Defendants Pride, Admiral, and XYZ Insurance for all elements of damages allowed by law together with interest thereon, and costs and disbursements; and

3. Award Plaintiff Session such other and further relief in the premises as in law and justice it may be entitled to receive.

        Respectfully submitted,

        **MONTGOMERY BARNETT, L.L.P.**

    BY:  */s/ John Y. Pearce*
        JOHN Y. PEARCE (# 10374)
        STEPHEN L. WILLIAMSON (#8316)
        R. ETHAN ZUBIC (#34834)
        3300 Energy Centre
        1100 Poydras Street
        New Orleans, LA   70163-3300
        (504) 585-3200

*Attorneys for Session Fixture Company, Inc.*

**SERVICE: REQUEST FOR WAIVER OF SERVICE OF SUMMONS,**

PRIDE MARKETING AND PROCUREMENT, INC.

Through its registered agent for service
NOAH KRESSLER
201 ST. CHARLES AVENUE, SUITE 3600
NEW ORLEANS, LOUISIANA 70170

**PLEASE HOLD SERVICE FOR:**

ADMIRAL INSURANCE COMPANY

XYZ INSURANCE COMPANY