# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SESSION FIXTURE COMPANY, INC.**                    **CIVIL ACTION**

**VERSUS**                                           **No. 16-9373**

**PRIDE MARKETING AND**
**PROCUREMENT, INC. ET AL.**                         **SECTION I**

## ORDER AND REASONS

Before the Court are two motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendant Pride Marketing and Procurement, Inc. ("Pride") moves[1] to dismiss on the ground that plaintiff lacks standing and on the ground that, even if plaintiff does have standing, plaintiff is barred from recovering because it improperly terminated its contractual relationship with Pride.  Defendant Admiral Insurance Company ("Admiral")—Pride's insurer—moves[2] to dismiss on the ground that plaintiff has no claim against Admiral if it does not have a claim against Admiral's insured.

For the following reasons, the Court concludes that plaintiff's plausible allegations overcome defendants' standing challenge and that plaintiff's withdrawal from Pride does not preclude plaintiff from recovering.  The Court therefore denies both motions.

---

[1] R. Doc. No. 8.
[2] R. Doc. No. 11.

**BACKGROUND**

Pride is a Louisiana corporation whose purpose is to make large purchases of equipment from manufacturers on behalf of its shareholders. Such purchases allow the shareholders to take advantage of discounts that would otherwise be unavailable to them. By purchasing in bulk, Pride is also able to negotiate rebates from the manufacturers which rebates Pride then pays to its shareholders, pro rata, as distributions. Each shareholder of Pride is entitled to distributions based on the value of that individual shareholder's purchases. According to the complaint, although Pride collects and retains the rebates until they are paid to the shareholders, the collected rebates are at all times the property of the individual shareholders to whom they are owed.

Plaintiff Session Fixture Company, Inc. ("Session") was a shareholder of Pride. The relationship between Pride and its shareholders is governed by an "Amended and Restated Shareholder Agreement of Pride Marketing and Procurement, Inc." ("Shareholder Agreement" or "Agreement") as well as by Pride's bylaws. This lawsuit arose out of Pride's alleged failure to pay Session rebates under the terms of the Shareholder Agreement.

The complaint alleges that at least six members of Pride's board of directors are also part of the management committee of another company named Foodservicewarehouse.com ("FSW"). Session claims that these board members influenced the Pride board of directors to guaranty a line of credit that was extended to FSW by Iberia Bank. The board allegedly pledged Pride shareholder funds, including shareholder rebates, as collateral for the guaranty. The complaint alleges

that this was improper because Pride had no ownership interest in the rebates and it was only permitted to collect the rebates and distribute them to the shareholders.

According to the complaint, when FSW later defaulted on its credit obligation to Iberia Bank, the bank seized the pledged rebates in partial satisfaction of the obligation.  Session claims that approximately $1.5 million of the seized rebates were Session's property.  Following discovery of Pride's allegedly unauthorized pledge of Session's rebates as collateral and Pride's announcement to its shareholders that it would not be paying shareholders the rebates that were seized, Session immediately withdrew its membership in Pride and filed this lawsuit to recover damages.

## STANDARD OF LAW

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss, the Court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff.  *Hunter v. Berkshire Hathaway, Inc.*, No. 15-10854, 2016 WL 3710253, at *3 (5th Cir. July 11, 2016) (citation omitted).  The court generally must not consider any information outside the pleadings in deciding the motion, *Sullivan v. Leor Energy*, LLC, 600 F.3d 542, 546 (5th Cir. 2010),  however "a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims." *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011).  In deciding defendants' motions, this Court can consider the Shareholder Agreement and the bylaws because both are attached to Pride's motion, are

referenced in and attached to the complaint, and are central to Session's claims. *Maloney Gaming Mgmt.*, L.L.C., 456 F. App'x at 340.

For the complaint to survive a motion to dismiss, the facts taken as true must state a claim that is plausible on its face. *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 637-38 (5th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation omitted) (internal quotation marks omitted). A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation omitted) (internal quotation marks omitted). The Court cannot grant a motion to dismiss under Rule 12(b)(6) "unless the plaintiff would not be entitled to relief under any set of facts that [the plaintiff] could prove consistent with the complaint." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

"Motions to dismiss under Rule 12(b)(6) are rarely granted and generally disfavored." *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009).

### DERIVATIVE OR DIRECT

In addition to alleging breach of contract, Session alleges that Pride acted negligently, that its board of directors breached their fiduciary duty, and that Pride

unlawfully converted Session's funds.[3]   Pride argues that all of those claims are derivative in nature, meaning that they are claims that can only be asserted against the corporation by a current shareholder.   Since Session is no longer a shareholder, Pride argues that Session is barred from bringing the claims.[4]   *See Romero v. US Unwired, Inc.*, No. 04-2312, 2006 WL 2366342, at *3 (E.D. La. Aug. 11, 2006) (Africk, J.) (recognizing that in order to bring a derivative action the plaintiff must, among other requirements, "have been a shareholder of the corporation at the time of the disputed corporate action and at the time the lawsuit is brought").

Both sides agree that whether a claim is derivative or direct is determined by state law and that Louisiana law decides that issue.   *See Atkins v. Hibernia Corp.*, 182 F.3d 320, 323 (5th Cir. 1999).   Under Louisiana law, "[s]hareholders do not have a personal right to sue to recover for acts committed against, or causing damage to the corporation."   *St. Bernard Optical Corp. v. Schoenberger*, 925 So. 2d 604, 608 (La. App. 4 Cir. 2006) (citation omitted).   If a corporation is harmed, "a shareholder may [generally] only sue to recover losses to [the] corporation secondarily through a

---

[3] R. Doc. No. 1, at 6, 7, 8, 10.

[4] Although attacks on constitutional standing are considered under Rule 12(b)(1) of the Federal Rules of Civil Procedure, challenges to prudential standing are evaluated under Rule 12(b)(6).   *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011); *see also Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 505-06 (5th Cir. 2015) (reaffirming that prudential standing precedent remains binding even in the wake of the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)).

A shareholder's injury, "although indirect, may suffice to satisfy Article III standing, but the prudential rule against shareholder suits for injuries to the corporation precludes [the shareholder] from bringing [such indirect injury] claims because they belong to the corporation."   *See Nocula v. UGS Corp.*, 520 F.3d 719, 726-27 (7th Cir. 2008).   Accordingly, whether Session's claims are derivative or direct is properly decided under Rule 12(b)(6).

shareholder's derivative suit." *Id.* On the other hand, if the shareholder's injury is "unique" or "special" to the shareholder, the shareholder may be entitled to bring a direct action against the corporation. *Paul Piazza & Son, Inc. v. Piazza*, 83 So.3d 1066, 1070 (La. App. 5th Cir. 2011) (citing *Schoenberger*, 925 So. 2d at 608).

Louisiana courts have followed the American Law Institute's test for distinguishing direct from derivative claims. *See, e.g.*, *Schoenberger*, 925 So. 2d at 608; *Scaffidi and Chette Entm't v. Univ. of New Orleans Found.*, 898 So.2d 491, 495 (La. App. 5th Cir. 2005). That test provides:

> If a shareholder can recover in a suit *only* by showing that the corporation was injured, then the suit is considered derivative in nature, even if the corporate injury does cause indirect harm to the shareholder, while if a recovery can be granted to [the] shareholder without proof of a corporate loss, then the suit is considered to be direct.

8 La. Civ. L. Treatise, Business Organizations § 34.03 (2d ed. 2016) (emphasis added).

A classic example of a derivative lawsuit would be a shareholder's suit against a corporation for unlawful corporate actions that diminished the overall value of the corporation, and thereby diminished the value of the individual shareholder's stock. *See, e.g.*, *Atkins*, 182 F.3d at 323-24; *Palowsky v. Premier Bancorp, Inc.*, 597 So. 2d 543, 545 (La. Ct. App. 1 Cir. 1992) ("[I]f a shareholder suffers only an indirect loss in the form of a decline in the value of his stock resulting from a loss sustained by the corporation due to mismanagement and/or breaches of fiduciary duty, that shareholder may only bring a derivative action on behalf of the corporation.").

In contrast, a direct action would be appropriate where the shareholder seeks to vindicate some right held by the shareholder individually, "such as a right to vote or to protect against dilution of voting or financial rights, to inspect books or records,

to receive [an individual] dividend [that other shareholders received], or to recover for fraud in connection with the purchase or sale of his stock." *Id.* (citations omitted). In *Wilson v. H.J. Wilson Co.*, for example, the plaintiff's claim for breach of fiduciary duty was direct where it was based upon an alleged fraudulent transfer to the corporation's principal stockholder of certain shares belonging to the plaintiff. *See* 430 So. 2d 1227 (La. Ct. App. 1 Cir. 1983).

The allegation in the complaint is that the corporation does not own the rebates it collects.[5] Although Pride disputes that claim, the Shareholder Agreement states that Pride "has an absolute and irrevocable security interest and right of set-off against all funds in its possession or under its control, *belonging to a Shareholder*, *including rebates* and refunds paid or to be paid from the Vendor to PRIDE, and by PRIDE to the Shareholder, in connection with Product Purchases." R. Doc. No. 1-1, at 8 (emphasis added). In the next sentence, the Agreement refers to Pride's right in the rebates as a "contractual right of setoff." R. Doc. No. 1-1, at 8. The term "security interest" is defined in La.R.S. 10:1–201(37) as "an interest in personal property or fixtures, created by contract, which secures payment or performance of an obligation." The owner of a security interest in property does not own the property itself. Accepting the well-pled factual allegations in the complaint as true, Session has plausibly alleged that it owns the rebates.

---

[5] *See* R. Doc. No. 1, at 3 ¶ 11 ("At all relevant times, the Rebates received by Pride attributable to Session for purchases made by or on account of Session were and remain the property of Session."); R. Doc. No. 1, at 10 ¶ 44 ("At all times relevant hereto, the Rebates received by Pride attributable to Session for purchases made by or on account of Session during 2015 and 2016 year to date were and remain the property of Session.").

The Louisiana Civil Law Treatise explains that "[s]uits brought by shareholders to recover for damage or loss to *corporation-owned property or interests* or to recover for losses *caused to the corporation* as a result of the self-dealing or negligence of a corporate officer or director are considered to be derivative in nature." 8 La. Civ. L. Treatise § 34.03 (citations omitted) (emphasis added).   In contrast, actions to recover property belonging solely to the shareholder are direct actions. *Compare Glod v. Baker*, 851 So. 2d 1255, 1266 (La. App. 3 Cir. 2003) ("If the tort-based loss belongs to the shareholder, he has a right to sue for its recovery[.]") *with Maestri v. Destrehan Veterinary Hosp., Inc.*, 653 So. 2d 1241, 1244 (La. App. 5 Cir. 1995) ("Even assuming the alleged losses to DVH occurred, Maestri has no legally recognized right to recover these individually since the assets of the corporation belong to it and not to Maestri individually.").

A direct action may be appropriate "even though the corporation has also suffered damages caused by the same harm." *Glod v. Baker*, 851 So. 2d 1255, 1266 (La. App. 3 Cir. 2003).   There may have been some damage to other shareholders by the board of directors' alleged misconduct.   However, those additional injuries do not render this action derivative.   The question is whether the harm to the shareholder is secondary or direct.   Because Session plausibly alleges ownership over the rebates themselves, Session has claimed a direct injury that is distinct from any injury to the corporation.   A dismissal for lack of standing would therefore be inappropriate at this stage of the proceedings.[6]

---

[6] The Court reaches this result because it accepts the plaintiff's well-pled factual allegations as true, especially considering that defendants have submitted no

## IMPROPER WITHDRAWAL

The Shareholder Agreement sets forth certain procedural requirements that the shareholders are supposed to follow if and when they choose to cancel their membership in the corporation.  It provides, among other things, that a shareholder can cancel its interest in Pride by providing advance written notice at least 60 days prior to the end of the calendar year or no later than October 31st of the year prior to the calendar year it wants its ownership interest to terminate.[7]  The bylaws provide that if a cancelling shareholder has failed to comply with all of the requirements of the Shareholder Agreement and the bylaws, "the Corporation shall have no obligation to make any payment or distribution to the terminated or withdrawing Shareholder of any kind and nature."[8]

The complaint does not specify the date on which Session withdrew from Pride. It does state that Session withdrew immediately following Pride's announcement in March 2016 that Pride would not be paying 2015 and 2016 rebates to its shareholders.[9]  This lawsuit was filed on June 9, 2016.   In order for Session's withdrawal from the corporation to be proper under the Shareholder Agreement and bylaws, Session needed to provide notice to the corporation of its intent to withdraw no later than October 31, 2016.  The withdrawal would then become effective at the

---

contradictory evidence in support of their motions.  If discovery later reveals Session's allegations regarding ownership to be untrue, nothing precludes the defendants from re-urging the standing issue.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992) (explaining that the showing necessary to overcome a standing challenge becomes greater as the case proceeds).

[7] R. Doc. No. 1-1, at 1.

[8] R. Doc. No. 8-2, at 31.

[9] R. Doc. No. 1, at 6 ¶ 27.

conclusion of 2016.  Because Session did not provide notice or wait until the end of 2016 to terminate its membership in the corporation, Pride argues that, pursuant to the bylaws, Session has forfeited any claim to rebates it earned prior to the withdrawal.

Session concedes that it did not follow the Agreement's procedures when it withdrew from Pride, but it argues that its failure to comply with the requirement should be excused because Pride had already committed an "anticipatory breach." Under Louisiana law, the doctrine of anticipatory breach of contract "applies when an obligor announces he will not perform an obligation which is due sometime in the future." *Fertel v. Brooks*, 832 So. 2d 297, 305 (La. App. 4 Cir. 2002).  In such circumstances, "[t]he obligee need not wait until the obligor fails to perform for the contract to be considered in breach." *Id.*  The obligee can simply terminate. *Id.*

Session argues that Pride's announcement in March 2016 that it would not be paying the rebates that accrued during 2015 and 2016 was effectively an announcement that Pride was refusing to comply with the terms of the Shareholder Agreement.  Pride prefers to characterize its announcement as a notification to shareholders that Pride feared it would not be able to perform its obligations due to financial difficulties, seeking to take advantage of the rule that such pronouncements cannot be considered anticipatory breaches. *See Ringel & Meyer, Inc. v. Falstaff Brewing Corp.*, 511 F.2d 659, 660 (5th Cir. 1975) ("So far as we know, no court, common-law or civil, has yet held that obvious incapability of performance due to financial difficulties constitutes anticipatory breach.").

But the Court need not resolve that dispute.  In Louisiana, "where one party substantially breaches a contract, the other party to it has a defense and an excuse for nonperformance." *LAD Servs. of Louisiana, L.L.C. v. Superior Derrick Servs., L.L.C.*, 167 So. 3d 746, 755 (La. App. 1 Cir. 2014); *see also Olympic Insurance Co. v. H. D. Harrison, Inc.*, 463 F.2d 1049 (5th Cir. 1972) (holding that an insurance company's termination of a contract with an insurance agent was improper because the company failed to provide prior written notice, but that the company's breach was excused by the agent's prior contractual violations).  Accepting the factual allegations in the complaint as true, the board had, prior to its announcement that it would not be distributing rebates, already breached the Shareholder Agreement when it pledged shareholder rebates it did not own as collateral for FSW's debt.[10]  Session's early termination of its membership in the corporation was therefore, according to Session's well-pled allegations, excused by Pride's prior breach of the Shareholder Agreement.

The defendants argue that Session's allegation that the pledge of shareholder rebates was improper is a legal conclusion that this Court should not accept as true in deciding defendants' motions.  Both defendants point out that neither the Shareholder Agreement nor the bylaws "address the question of whether or not the Corporation has or does not have the authority to pledge any property, including the rebates."[11]  Accordingly, they argue that the pledge of the rebates was lawful.  In

---

[10] *See* R. Doc. No. 1, at 6 ¶ 26 ("Pride had no right or authority to pledge Rebates belonging to Session as collateral for FSW's debt.").

[11] R. Doc. No. 26, at 2; *see also* R. Doc. No. 28, at 3 ("[A]lthough Session's Complaint is full of conclusory statements that the Board acted *ultra vires* in pledging the

response, Session argues that the unlawfulness of the pledge "is confirmed by the lack of any such authority appearing in any document purporting to govern the relationship between Session and Pride."[12]

Having reviewed the Shareholder Agreement and the bylaws, the Court agrees that no provision explicitly allows or disallows the corporation the right to pledge shareholder rebates. "When the words of a contract do not address a specific situation, [courts] must examine, not only, the words of the contract but, also, the surrounding circumstances to determine if the parties intended to include any implied incidental obligations in that situation." *Fleming v. Acadian Geophysical Servs., Inc.*, 827 So. 2d 623, 627 (La. App. 3 Cir. 2002). "Evaluating the evidence to assess the parties' subjective intent is a task for the trier of *fact*." *Id.* at 628 (emphasis in original). In determining the contract's meaning, however, ambiguities in the contract should be construed against the party that drafted the contract. *See Foshee v. Georgia Gulf Chemicals & Vinyls, L.L.C.*, 42 So. 3d 346, 348 (La. 2010).

Whether Pride's pledge of shareholder rebates was unlawful goes to the heart of this dispute. The Shareholder Agreement and bylaws alone do not explicitly answer that question. It may well be that the parties' subjective intent must be analyzed by a trier of fact before the issue can be resolved. In any case, the Court will not resolve the dispute without a more fully developed factual record. "All federal

---

rebates, there is nothing in either the Shareholder Agreement or the Bylaws which prohibits the PRIDE Board of Directors from guaranteeing or even pledging the rebates.").

[12] R. Doc. No. 27, at 4. Session also argues that the pledge "was a default of the obligations owed Session under the Shareholder Agreement (Art. VII § 7.01) and the Bylaws." R. Doc. No. 27, at 4.

courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists."  Wright & Miller, Federal Practice and Procedure: Civil 3d § 1357 (2016).  Defendants have not carried their burden of demonstrating that the corporation's pledge of shareholder funds was lawful.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Pride and Admiral's motions to dismiss are **DENIED**.


New Orleans, Louisiana, December 13, 2016.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**